**In the United States District Court
for the District of Kansas**

———————

Case No. 20-cr-40083-TC

———————

UNITED STATES OF AMERICA,

*Plaintiff*

v.

DEVIN M. HELTON,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Devin M. Helton is charged with possession with the intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and possession of a firearm by a prohibited felon, 18 U.S.C. § 922(g)(1). Helton moved to suppress the evidence that ultimately led to these charges because, he argues, the items were located during an unlawful search of his vehicle. For the following reasons, Helton's motion is denied.

**I**

**A**

One evening in September 2020, Shawnee County Sheriff's Deputies Gardner and Comer were travelling together in a single patrol vehicle when they noticed a car being driven on Southwest Topeka Boulevard. The car caught their attention because the trunk was ajar and bouncing open. As the deputies followed the car, they noticed its tag lamp was not working, a traffic infraction. *See* Kan. Stat. Ann. § 8-1706(c). Based on that, the deputies followed this car as it pulled into a McDonald's parking lot.

1

The deputies pulled behind the car as it entered the drive-through, observing that the driver frequently glanced back at the deputies' patrol car. While they waited, Comer searched for information on the vehicle using the license plate. That inquiry revealed that the vehicle's registrant, Devin Helton, had a suspended license and was on supervised release for felony possession of a firearm. Given their proximity to the car and Helton's driver's license photograph visible on their on-board computer, it appeared Helton was the driver.

The deputies commenced a traffic stop once Helton pulled out of the drive-through and parked in the McDonald's lot to await his food. Three occupants were inside the car: Helton in the driver's seat, a woman in the front passenger seat, and a child in the back seat. Gardner approached Helton while Comer approached the woman. Comer immediately spotted an open 25-ounce beer can in the center console. Comer knew that Kansas law prohibits the transportation of open alcoholic beverages on highways or streets. Kan. Stat. Ann. § 8-1599. Comer had the passenger hand him the open beer can, and Comer placed it on top of the car.

Gardner told Helton why they stopped him and asked for identification. Gardner also noted to Helton that he smelled alcohol and asked Helton how much he had to drink. Helton denied being under the influence. Gardner and Comer then returned to the patrol car with Helton's ID and confirmed his identity. Dispatch also confirmed Helton was on supervised release. Gardner discussed with Comer his plan to further investigate Helton's intoxication level, and Comer noted the beer he confiscated was "barely cracked."

The deputies returned to Helton's car and ordered the passengers out of the car. Believing he had probable cause to search the vehicle based on the open beer can and smell of alcohol, Gardner informed Helton he was going to search the car. Gardner first retrieved a Styrofoam cup from the center cup holder, smelled its contents, and confirmed with Helton that it contained bourbon. Gardner then searched under the driver's seat and found a handgun. The deputies arrested Helton for unlawfully possessing the handgun and placed him in their patrol car.

Gardner continued to search the car for evidence. He discovered additional open bottles of whiskey and brandy, and a jacket in the driver's seat. Inside the jacket pockets, Gardner found a small digital

scale and a plastic container holding what Gardner suspected was methamphetamine and marijuana.

## B

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches and seizures—of people, their homes, and their personal property—are presumed unreasonable when conducted without a warrant. *Id.*; *United States v. Karo*, 468 U.S. 705, 717 (1984). But that does not mean that every warrantless search or seizure is unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions.").

In the event of a warrantless search or seizure, the government may rebut the presumption of unreasonableness by showing that an exception to the warrant requirement applies. *Id.* While it is a defendant's burden to show the Fourth Amendment is implicated, once he carries that burden, the government must prove the conduct in question was reasonable. *United States v. Neugin*, 958 F.3d 924, 930 (10th Cir. 2020). One way it can do so is to show that law enforcement officers had probable cause to search a vehicle without a warrant. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (citing *California v. Carney*, 471 U.S. 386, 390 (1985)). Vehicles' "ready mobility" and the pervasive public highway regulations have long justified this so-called "automobile exception." *Carroll v. United States*, 267 U.S. 132, 153 (1925) (upholding a warrantless vehicle search because a "vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought"); *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (holding that "pervasive and continuing governmental regulation" diminishes the expectation of privacy in automobiles).

## II

Helton's argument that search here violated his Fourth Amendment rights has two primary components. He first argues the search was impermissible because Gardner lacked probable cause to believe that an open-container violation occurred. And, even if it did constitute a violation of law, he contends that, once the cracked-open can of beer had been located, Gardner lacked probable cause to continue searching the car additional open containers. And as a result, Helton

argues, all evidence obtained during the search of his vehicle should be suppressed.

Helton's arguments fail as a matter of law. The deputies had probable cause to believe that Helton violated Kan. Stat. Ann. § 8-1599 and that justified their continued search of Helton's vehicle. Accordingly, Helton's Motion to Suppress the evidence from his car is denied.

## A

Helton first argues the search was unlawful because the deputies lacked probable cause to believe that Helton violated Kan. Stat. Ann. § 8-1599. Doc. 25 at 5–9. Helton correctly notes that Section 8-1599's plain language does not prohibit open containers on private roadways—only on public transits such as highways and streets. Kan. Stat. Ann. § 8-1599; *see* Kan. Stat. Ann. § 8-1424 (defining "highway" to exclude private roadways); Kan. Stat. Ann. § 8-1473 (defining "street" to exclude private roadways). Thus, Helton asserts that when the deputies observed the open beer in the McDonald's parking lot, Helton was not on a public transit. And because the deputies did not observe the "barely cracked" beer while Helton was driving on the street, they had no probable cause to believe that he violated Section 8-1599.

Helton's argument sets the probable-cause bar too high. Probable cause requires only "'a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Such a probability is measured by a reasonableness standard: whether the totality of the circumstances, when viewed from an objectively reasonable officer's standpoint, shows a substantial chance of criminal activity. *See id.*

Based on the totality of the circumstances, an objectively reasonable police officer would conclude that a Section 8-1599 violation occurred. The deputies witnessed Helton driving on a public roadway minutes before they saw the open beer can in his car, immediately followed him into the McDonald's drive-through, and observed Helton frequently glancing at their patrol car. And when Gardner approached Helton's window, he immediately smelled alcohol. These circumstances, from the view of an objectively reasonable offier, create a substantial chance that Helton had open alcohol containers in his car moments earlier when driving on a public roadway. *Cf. United States v. Washington*, 670 F.3d 1321, 1324 (D.C.Cir.2012). It is possible that

4

Helton may convince a jury that he first cracked the beer can open only after pulling into the private parking lot while being followed by the deputies' patrol car right behind him, but that possibility does not undermine the deputies' reasonable belief that he had been transporting an open container on the roadway from where they just saw him driving. *Kaley v. United States*, 571 U.S. 320, 338 (2014). Thus, the deputies had probable cause that Helton violated Kansas's open container law.

### B

Helton next argues that even if there was probable cause to believe that an open container violation occurred, Gardner lacked probable cause to continue searching the passenger compartment for additional open containers after he removed the opened can of beer. Doc. 25 at 9–11. That argument contradicts the Tenth Circuit's interpretation of the Fourth Amendment: "Probable cause to search a vehicle is established if, under the 'totality of the circumstances' there is a 'fair probability' that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993). The circumstances present, which created probable cause to believe Helton violated Section 8-1599, also justified Gardner's search of the passenger compartment for additional evidence of that crime—*i.e.*, for more open containers of alcohol.[1] *See, e.g.*, *United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015) (holding that a marijuana smell alone establishes probable cause to search a vehicle for marijuana); *Nielsen*, 9 F.3d at 1491 (same); *see also U.S. v. Howton*, 260 F. App'x 813, 815 (6th Cir. 2008) (holding the officer's observation of an open beer can in violation of K.S.A. 8-1599 gave him probable cause to search the vehicle for additional open containers).

Probable cause to search for additional evidence of the same crime is still limited by the object of the search and the places where that object may reasonably be found. *United States v. Ross*, 456 U.S. 798, 824

---

[1] At the hearing, Gardner testified that he did not intend to arrest Helton for violating Kansas's open container law. While that concession would appear to undermine his justification for any additional search, Helton elicited no testimony from Gardner as to whether that decision was made before the gun was located and, even assuming the decision was made before the gun was located, Helton has not argued that Gardner's decision rendered the search invalid.

5

(1982). Gardner did not transgress that limitation here. After locating the Styrofoam cup in the same console where the open can of beer had been, he checked the cup's contents. After he determined that the cup contained bourbon or some other hard alcohol, he looked under the driver's seat where an objectively reasonable officer might believe there would be either a bottle of liquor or an empty beer can. It was while looking under the driver's seat that Gardner saw the handgun. That search was lawful beause the firearm he located was found while lawfully searching for other open containers and, knowing that Helton was prohibited from possessing a firearm, its incriminating nature was immediately apparent. *See, e.g., United States v. Khan*, 989 F.3d 806, 818 (10th Cir. 2021); *see also Washington*, 670 F.3d at 1324 (finding probable cause to look for open container under driver's seat where firearm was located).

### C

Helton initially argued that the subsequent search of his clothing and containers found therein was also unlawful. Doc. 25 at 11–12. But he conceded at the suppression hearing that if Gardner's search leading to the discovery of the handgun was lawful, then so was the search of his jacket pockets and containers. That concession is legally sound. *See, e.g., Ross*, 456 U.S. at 824. Because the search under the driver's seat uncovering the firearm was lawful, the subsequent search of the jacket pockets and the containers within was also lawful. *See United States v. Mirabal*, 876 F.3d 1029, 1033 (10th Cir. 2017).

### III

For the foregoing reasons, Helton's Motion to Suppress, Doc. 25, is DENIED.

It is so ordered.

Date: June 22, 2021          <u>s/ Toby Crouse</u>
                              Toby Crouse
                              United States District Judge